

## Office of the Attorney General
### State of Texas
January 23, 1998

**DAN MORALES**
ATTORNEY GENERAL

The Honorable David Sibley
Chair, Senate Committee
  on Economic Development
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-466

Re: Constitutionality of section 47.01(4)(B), Penal Code, which excepts certain types of electronic contrivances from the definition of "gambling device," and related questions (RQ-1060)

Dear Senator Sibley:

You have requested our opinion regarding the constitutionality of the legislature's 1995 amendment to the definition of "gambling device" to exclude from its ambit certain kinds òf machines that, for consideration, award prizes to a player on the basis of chance.

Section 47.06(a) of the Penal Code provides:

> A person commits an offense if, with the intent to further gambling, he knowingly owns, manufactures, transfers, or possesses any gambling device that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a gambling device.

In 1995, the legislature amended the Penal Code's definition of "gambling device" to read:

> "Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:
>
> (A) includes, but is not limited to, gambling device versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that as a result of the play or operation of the game award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits; and
>
> (B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash

> merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

Penal Code § 47.01(4). The substance of the 1995 amendment to the definition of gambling device was initially adopted in 1993. *See* Act of May 31, 1993, 73d Leg., R.S., ch. 774, § 1, 1993 Tex. Gen. Laws 3027, 3027. *See generally* Attorney General Opinion DM-280 (1994) (history of 1993 amendments). Prior to 1993, a "gambling device" was defined as

> any contrivance that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

Section 47(a) of article III of the Texas Constitution provides:

> The Legislature shall pass laws prohibiting lotteries and gift enterprises in this State other than those authorized by Subsections (b), (d), and (e) of this section.[1]

You ask whether, in light of article III, section 47(a), the amended definition of "gambling device" invalidly authorizes the operation of certain "lotteries" not contemplated by the constitution.

We must, of course, begin with the proposition that a statute must be upheld "if a reasonable construction can be ascertained, which will render the statute constitutional." *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979). If, however, the amended definition of "gambling device" authorizes the operation of slot machines, it cannot be upheld. In Attorney General Opinion DM-302, this office considered whether the legislature was empowered, in the absence of a constitutional amendment, to authorize the operation of slot machines, either directly or by amending the definition of "bet" in section 47.01(1) of the Penal Code. Attorney General Opinion DM-302 (1994). The opinion adopted the requestor's characterization of a "slot machine" as a device that for consideration awards cash or other prizes solely on the basis of chance and that is not affected by any skill, judgment, or knowledge of a particular player. *Id.* at 11. A device that fits this description, the opinion concluded, is "an unlawful lottery in contravention of article III, section 47 of the Texas Constitution." *Id.* The opinion noted that, although article III, section 47,

---

[1] Subsection (b) permits the legislature to authorize bingo games conducted by a church or other nonprofit organization; subsection (d) does the same for charitable raffles; and subsection (e) permits the legislature to authorize a state lottery.

"is not self-enacting, and, had the legislature never enacted any implementing legislation, suit would not lie to compel enactment," it is also the case that

> where there is a history of penal statutes implementing the constitutional prohibition, repeal of one of those prohibitions is not a neutral act, and, in our opinion, such repeal would contravene the constitutional proscription of subsection (a) of section 47 of article III.

Prior to 1993, the definition of "gambling device" contained no exception for contrivances that at present fit within the scope of paragraph (B) of article 47.01(4). The pre-1993 definition is of long standing. Thus, there exists a "history of penal statutes implementing the constitutional prohibition," and as a result, the amendment of section 47.01(4)'s definition of "gambling device" in paragraph (B) to exempt from its proscription a limited class of contrivances, like the similar situation in Attorney General Opinion DM-302, "is not a neutral act." The constitution allows no exception for lotteries whose prizes are small, even those that some might call *de minimis*. We are compelled to conclude that the exception from the definition of "gambling device" in section 47.01(4)(B) of the Penal Code invalidly authorizes the operation of certain "lotteries" not contemplated by the constitution.

You also ask whether chapter 47 of the Penal Code prohibits the use of machines known as "'eight liners,' which are video versions of slot machines, and other machines that operate wholly or partially by chance, reward players with prizes, and are not 'adapted solely for bona fide amusement purposes.'"[2] This question is prompted by your concern about the growth of the "eight-liner" industry since the amended definition of "gambling device" was first adopted in 1993. You advise:

> This amendment essentially legalized machines that pay off in coupons redeemable for non-cash merchandise valued at no more than five dollars. In practice, these machines have been used to permit accumulation of credits so that players have obtained winnings well in excess of the statutory limit. However, because of the exception's inherent ambiguity, law enforcement authorities have encountered great difficulty in successful prosecution. That difficulty prompted the 75th Legislature to propose an amendment that would have clarified the exception, thus enhancing prosecutions. Despite widespread support from the law enforcement community, that proposal failed to become law.[3]
>
> . . . .

---

[2]Letter from Senator David Sibley, Chair, Economic Development Committee, Texas State Senate, to the Honorable Dan Morales, Attorney General, Office of Texas Attorney General (Jan. 4, 1998).

[3]*Id.*

It is clear that the illegal use of "eight liners" in Texas continues to grow at a rapid pace. This growth has been fueled by a vague and potentially constitutionally defective amendment to the Penal Code's gambling device definition.[4]

Although, as we have concluded, the 1995 exception to the definition of "gambling device" in paragraph (B) of section 47.01(4) is void because it contravenes the Texas Constitution's proscription of "lotteries," the rest of the definition remains intact. The 1995 act that enacted the present version of article 47.01(4) contains neither a severability clause nor a nonseverability clause.[5] Section 311.032(c) of the Government Code provides:

In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

The present version of the definition of "gambling device" "can be given effect without the invalid provision" simply by placing a period after "credits" and before the semicolon in paragraph (A), by deleting the phrase "not excluded under Paragraph (B)" in the first paragraph of article 47.01(4), and by severing paragraph (B).

If the contrivances described as "eight-liners" fit the Penal Code's definition of "gambling device," freed of the unconstitutional 1995 exception in paragraph (B), their possession is proscribed. In *State v. Mendel*, 871 S.W.2d 906 (Tex. App.--Houston [14th Dist.] 1994, no writ), the court, reviewing an attack on the constitutionality of article 47.01(4) on grounds of vagueness, considered a particular kind of machine that is virtually identical to the device you have described as an "eight-liner." The court said:

At the hearing on the motions to quash the indictments, the court heard testimony from Officer Templeton of the Houston Police Department about the Lucky 8 Liner video slot machines possessed by appellees. Appellees are the owners of the club in which the video slot machines were found. The machines will accept anything from a quarter to a one hundred dollar bill. Depending on the amount of money that is put in the machine, it gives the player a set number of credits. A player wagers the number of credits he chooses, pushes a button, and then an electronic display depicts lines of fruit and numbers, much like a traditional slot machine. After accumulating credits, employees of the club paid the player in cash at the rate of one dollar

---

[4]*Id.*

[5]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 318, 1995 Tex. Gen. Laws 2734, 2734.

per four credits. The employee then touched a "knock-off switch," which would reset the credits at zero. Officer Templeton testified that this "knock-off switch," along with the "accounting memory" of the machine, the number of credits bet on each play, and the absence of any skill involved in its play, tended to establish the machine's character as a gambling device.

*Mendel,* 871 S.W.2d at 907-08.

The three elements necessary to constitute a prohibited "lottery" are: 1) the offering of a prize, 2) by chance, and 3) the giving of considerat..jn for an opportunity to win the prize. *City of Wink v. Griffith Amusement Co.,* 100 S.W.2d 695, 701 (Tex. 1936); *see* Attorney General Opinion DM-302 (1994); Letter Opinion No. 97-008 (1997) (and cases cited therein). As the court found in *Mendel,* an "eight-liner" functions solely on the basis of "chance" and its operation obviously requires the payment of consideration in order to play. Furthermore, we have been advised that, while most eight liners do not pay off directly in cash, coupons are redeemable for, *inter alia,* gift certificates from a variety of reputable merchants. Thus, the three elements necessary to constitute a prohibited "lottery" appear to be present in the case of "eight-liners." We believe it likely that a court would find, as did the *Mendel* court, that an eight-liner is a "gambling device" within the statutory definition.

Finally, you ask whether the Texas Lottery Commission and the Texas Alcoholic Beverage Commission "possess the statutory enabling authority to pass rules permitting the agencies to suspend or revoke a license if a regulated entity owns or operates an 'eight-liner.'"

In order to sell tickets offered by the state lottery, a person must be licensed as a "sales agent."[6] The Lottery Commission is required, after a hearing, to "suspend or revoke a license" of a sales agent if it finds, *inter alia,* that the individual "has been convicted of a felony, criminal fraud, gambling or gambling-related offense, or a misdemeanor involving moral turpitude, if less than 10 years has elapsed since the termination of the sentence, parole, mandatory supervision, or probation served for the offense."[7] If an "eight-liner" or similar machine is a "gambling device" under section 47.01(4) of the Penal Code, conviction for owning or possessing such a device under section 47.06(a) is an offense for which the Lottery Commission may suspend or revoke the license of a sales agent. The Lottery Commission also has rulemaking authority to consider the conduct of an applicant or licensee with respect to gambling.[8]

---

[6]Gov't Code § 466.151.

[7]*Id.* § 466.155(a)(1)(A).

[8]*Id.* §§ 466.015, .154

Likewise, the Lottery Commission is authorized to issue licenses for "the conduct of bingo;"[9] to manufacture "bingo supplies;"[10] to sell, distribute, or supply "bingo equipment, devices, or supplies for use in bingo games in this state;"[11] and to sell or supply "automated bingo services for the use of licensed authorized organizations."[12] None of these licenses may be issued to any person who has been convicted of a "gambling offense,"[13] and the Lottery Commission, after a hearing, may suspend or revoke any license for failure to comply with the act, "for any reason that would allow or require the commission to refuse to issue or renew a license of the same class."[14] Just as is the case for lottery sales agents, conviction for owning or possessing a "gambling device" under section 47.06(a) of the Penal Code is an offense for which the Lottery Commission may suspend or revoke the license of any individual licensed to participate in various bingo activities.

The Alcoholic Beverage Commission is specifically authorized to "prescribe and publish rules necessary to carry out the provisions of this code."[15] The commission is further authorized to "supervise and regulate licensees and permittees and their places of business in matters affecting the public," and this "authority is not limited to matters specifically mentioned in [the] [Alcoholic Beverage Code]."[16] Finally, "a license or permit issued under [the] code is a purely personal privilege and is subject to revocation or suspension if the holder is found to have violated a provision of this code or a rule of the commission."[17]

The authority of the Alcoholic Beverage Commission with regard to licensees or permittees charged or convicted of misdemeanor gambling offenses is very extensive. An original or renewal application for a retail dealer's license shall be denied if the applicant has within the past three years been convicted of an offense involving "gambling or gaming."[18] Additionally, an original or renewal license shall be denied under section 61.42(a)(3) or 61.42(a)(7) and may be denied under section 61.43(a)(1), 61.43(a)(3), or 61.43(a)(9). An original or renewal application for a permit may be denied under section 11.46(a)(1), 11.46(a)(3), 11.46(a)(6), or 11.46(a)(8).

---

[9]V.T.C.S. art. 179d, § 13(c).

[10]*Id.* § 13a(a).

[11]*Id.* § 13b(a).

[12]*Id.* § 13e(a).

[13]*Id.* §§ 13(c)(2), (q); 13a(c), 13b(c), 13e(c).

[14]*Id.* § 16(d).

[15]Alco. Bev. Code § 5.31.

[16]*Id.* § 5.33.

[17]*Id.* § 6.01(b).

[18]*Id.* § 69.06(a)(4), (c)(1), (2); *see also id.* § 25.06(a)(4), (c).

In our opinion, the Alcoholic Beverage Commission could reasonably conclude that a person charged with or convicted of a misdemeanor gambling offense under the Penal Code had "conducted his business in a place or manner which warrants the cancellation or suspension of a license[19] [or permit][20] based on the general welfare, health, peace, morals, safety, and sense of decency of the people."[21]  Such a conclusion would then furnish sufficient grounds for a suspension for up to sixty days or a cancellation of the individual's retail dealer on- or off-premises license or permit. Furthermore, we believe that the Alcoholic Beverage Commission is authorized to enact a rule prohibiting the presence of "eight-liners" in facilities licensed by the Alcoholic Beverage Commission, and it could then revoke the license or permit of an individual found, after notice and hearing, to have violated the rule.  Both the Alcoholic Beverage Code and the enabling statutes of the Lottery Commission offer means for the commissions to significantly halt the intrusion of these machines upon an unsuspecting public.

---

[19]*Id.* § 61.71(a)(17).

[20]*Id.* §§ 11.61(b)(7), .612(a).

[21]*Id.* § 61.71(a)(17); *see also id.* § 11.61.

## S U M M A R Y

The amended definition of "gambling device" in paragraph (B) of section 47.01(4) of the Penal Code invalidly authorizes the operation of certain "lotteries" proscribed by article III, section 47 of the Texas Constitution. The Lottery Commission has statutory and rulemaking authority to consider the conduct or activities of an applicant or licensee with respect to gambling. Additionally, the Alcoholic Beverage Commission has rulemaking and statutory authority to regulate permittees and licensees who have been found, after proper notice and a hearing, to have engaged in a gambling offense as defined in the Penal Code.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General